**S & A COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 4-62-Civ.-179.

United States District Court
D. Minnesota,
Fourth Division.

July 3, 1963.

678

John W. Windhorst, John S. Hibbs, Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., A. H. LaForce, II, Department of Justice, Washington, D. C., Miles W. Lord, U. S. Atty., Murray L. Galinson, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

DEVITT, Chief Judge.

█ In this action for the recovery of corporate income taxes paid by the plaintiff for its fiscal year ending August 31, 1956, the sole question presented is as to the correctness of the government's disallowance of depreciation deductions for the year in question during which all of the depreciable assets of the plaintiff were sold at a price in excess of their undepreciated cost at the beginning of the taxable year.

Jurisdiction is based on 28 U.S.C.A. Sec. 1346(a) (1).

The facts are not in dispute and the parties have entered into a Stipulation, the pertinent parts of which are:

"I.

"This is an action for the recovery of corporate income taxes assessed against and collected from the Plaintiff for the fiscal year ended August 31, 1956. Jurisdiction of this Court is predicated upon the provisions of Title 28, Section 1346(a) (1) of the United States Code.

"II.

"Plaintiff, S & A Company (formerly Scott-Atwater Manufacturing Company, Inc.), is, and at all times hereinafter mentioned was, a corporation organized under the laws of the State of Minnesota, having its principal place of business in the City of Minneapolis, County of Hennepin, State of Minnesota.

"III.

"Plaintiff uses, and at all times hereinafter mentioned, used, the fiscal year ending August 31 [1956] and the accrual basis method of accounting in keeping its books and in reporting its income.

"IV.

"Plaintiff filed a timely federal income tax return (Form 1120) for its fiscal year ended August 31, 1956, with the District Director of Internal Revenue in and for the District of Minnesota and paid the amount of tax assessed on said return. An additional assessment of income taxes of $80,532.38 and interest of $20,780.27 was made by said District Director of Internal Revenue for the Plaintiff's fiscal year ended August 31, 1956. Plaintiff paid said latter amounts by crediting overpayments of income taxes due it totalling $998.82 against its liability and by paying the balance of $100,313.83 by its check on March 27, 1961.

"V.

"On April 1, 1956, Plaintiff sold all of its operating assets used in its business of manufacturing and selling outboard motors for cash and notes and the assumption of liabilities to McCulloch Corporation (formerly McCulloch Motors Corporation). Said purchaser has continued

to carry on said business at the same location with substantially the same employees as said business was previously carried on by Plaintiff until on or about April 1, 1956.

## "VI.

"Included in the assets sold by Plaintiff on April 1, 1956, were land and depreciable capital assets with a total cost of $2,082,256.22 and accumulated depreciation and amortization of $943,042.76; securities with a total cost of $160.30; and other assets with a total cost of $5,560,835.89 less liabilities of $4,332,959.09. On its federal income tax return for its fiscal year ended August 31, 1956, Plaintiff allocated $3,099,123.15 of the sale price to said land and depreciable capital assets; $301.25 of the sale price to said securities; and $5,560,835.89 of the sale price, including the amount of liabilities assumed by the purchaser, *viz.*, $4,332,959.09, to said other assets. Plaintiff elected on its federal income tax return for such fiscal year to report on the installment basis the aggregate gain from the sale by Plaintiff to McCulloch Corporation on April 1, 1956, of said depreciable capital assets, securities and other assets, *viz.*, $1,960,050.64, and reported on said return as long-term capital gains the sum of $471,659.53, which sum represents the portion of gain attributable to the installment proceeds from such sale received by Plaintiff during its fiscal year ended August 31, 1956, *viz.*, $1,041,306.20.

## "VII.

"Plaintiff claimed a deduction on its federal income tax return for its fiscal year ended August 31, 1956, of $125,481.77 for depreciation for the period September 1, 1955 to April 1, 1956, with respect to the depreciable assets sold by Plaintiff to McCulloch Corporation on April 1, 1956.

## "VIII.

"Defendant determined that said deduction of $125,481.77 claimed by Plaintiff on its federal income tax return for its fiscal year ended August 31, 1956, for depreciation for the period September 1, 1955, to April 1, 1956, with respect to the depreciable assets sold by Plaintiff to McCulloch Corporation on April 1, 1956, should be disallowed. The correctness of this determination is the only issue in this proceeding.

## "IX.

"On December 15, 1961, Plaintiff filed a claim for refund in which Plaintiff claimed a refund of $72,702.87 together with interest allowed by law. On June 18, 1962, Plaintiff instituted this suit. More than six months elapsed between the filing of said claim for refund and the institution of this suit. Defendant has made no refund to Plaintiff of any portion of the amounts set forth by Plaintiff in said claim for refund."

The specific issue of controversy, as framed by defendant, is "whether a deduction for depreciation is allowable when the assets on which depreciation is claimed are sold during the year involved at a price which exceeds the remaining undepreciated value of the assets as of the beginning of the year." The plaintiff has framed the issue in this language: "whether the amount of total sale price which was allocated by plaintiff to such depreciable assets and which exceeded the undepreciated cost of such assets on September 1, 1955, determines the 'salvage value' of such depreciable assets for purpose of the income tax laws."

At first blush, it would appear that the taxpayer is attempting to ride with the hares and hold with the hounds, and thus to unjustly enrich itself, but an examination of the statutes, Treasury Regulations and decided cases, leads to a contrary conclusion.

Section 167 of the 1954 Internal Revenue Code provides:

"(a) General rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or (2) of property held for the production of income."

A pertinent tax regulation provides that the proper allowance for depreciation is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan, whereby the amounts so set aside, plus the estimated salvage value, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property. Treasury Regulations, Sec. 1.-167(a)–1(a).

The apparent purpose of this provision in the Code is to allow the taxpayer a tax-free recovery of the amount expended on the depreciable property used in the business. The basis upon which depreciation is computed is, under most circumstances, the cost of the property. This, of course, will not prevent other factors from influencing the result of a profit or a loss when the asset is retired from the business—*e. g.*, appreciation or depreciation in market values. Thus, it is the rare transaction in which the amount received for a depreciable asset equals the estimated salvage value—resulting in the recovery to the taxpayer of exactly the amount of the undepreciated cost of the asset. It must be assumed that the Congress was fully aware of this fact, and that the rarity of realization of the purposes underlying the enactment of section 167 was anticipated. Furthermore, it was not until 1962, with the adoption of section 1245 of the Code, that Congress attempted to "make more perfect" and more susceptible of realization the purposes of section 167 by taxing the gain on depreciable assets at ordinary rates.

It is apparent that two vital factors necessary to a computation of the annual depreciation allowance, (1) useful life and (2) salvage value, are estimated figures. Such estimates are made at the time of acquisition of the property. The estimates of useful life and salvage value necessarily involve the consideration of a number of factors, such as the type of asset involved, its economic or physical life, and its probable resale value, if any, at the expiration of such life. In addition, the business and experience of the taxpayer is important. Whether the asset is intended to be used by the taxpayer for its full economic life or for some predetermined period of time which is less than that of its economic life is also significant. Massey Motors, Inc. v. United States, 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960).

The Treasury Regulations, section 1.-167(a)–1(b), define and discuss useful life as follows:

"For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is *the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income.* This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. * * * The estimated remaining useful life may be subject to modification by reason of conditions known to exist

at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining *useful life shall be redetermined only when the change in the useful life is significant* and there is a clear and convincing basis for the redetermination. * * *" ( Emphasis added.)

The history of section 167, and particularly of the Treasury Regulation set out above, demonstrates the ever-changing position of the Internal Revenue Service in this area. Historically, useful life was the equivalent of the economic, or physical life of the asset. This philosophy, although somewhat emasculated by recent decisions of the United States Supreme Court, is not entirely defunct. The present view of useful life is closely connected with the taxpayer's anticipated use of the property over a particular period of time. This will be discussed later in connection with Massey Motors, Inc. v. United States, supra. Suffice it to say that useful life is not susceptible of an exact definition applicable to each of a large number of fact situations.

Salvage value, the second ingredient in determining the depreciation allowance, is tied in with useful life in that it is necessary to estimate simultaneously the period over which a taxpayer will use an asset and the price which it will command at the end of that period. The Regulations, Sec. 1.167(a)–1(c), define and explain salvage value as follows:

"Salvage value is the amount (*determined at the time of acquisition*) which is estimated will be realized upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. *Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels.* However, if there is a

redetermination of useful life under the rules of paragraph (b), salvage value may be redetermined based upon facts known at the time of such redetermination of useful life." (Emphasis added.)

The present dispute, although phrased somewhat differently by the parties, is narrow. It deals basically with the validity of the government's claim that the sale price received for the property involved is, in effect, conclusive evidence of the salvage value of such property. The defendant then applies this result to the general purpose of depreciation allowances—the recovery of the cost less salvage value—to conclude that if the sale price is in excess of the undepreciated cost at the beginning of the tax year, such recovery has already been made by the taxpayer. Thus, the depreciation allowance in the year of sale should be denied. Plaintiff takes issue with the equation of sales price to salvage value, contending that not only is such a redetermination of salvage value prohibited by the Regulations under section 167, but also that the underlying principles of estimating "salvage value" would be violated by any such action.

The first consideration is whether the facts of this case are such as to warrant a redetermination of the useful life of the assets. The Regulation, *supra*, sets out in some detail the criteria which are to be applied. It does not appear that the taxpayer may fairly be said to come within the letter or the spirit of any of them. It appears that at the times of acquisition of the various assets, plaintiff intended to use them in its business for their full economic lives. Neither the taxpayer's own experience nor that of the industry in general would indicate a different conclusion. But the defendant urges that the decisions of the Supreme Court in Massey Motors, Inc., supra, and Hertz Corp. v. United States, 364 U.S. 122, 80 S.Ct. 1420, 4 L.Ed.2d 1603 (1960), require a different result. These decisions, it is urged, stand for the proposition that the "useful life" concept of the Code and Regulations is to be determined by

reference to the "useful life" of the property to the *taxpayer* rather than to the economic or physical useful life of the asset. As we read those decisions, however, the Supreme Court was dealing with the useful life concept in the limited context of a situation where a taxpayer purchased assets with the *intent* of using such assets in the business for only a fraction of their full economic lives. Under those circumstances, the period for which such assets reasonably could be expected to be used "in the business" constituted useful life and governed in the computation of the depreciation allowances. In reaching this conclusion, reference was made to the use of the assets "by the taxpayer," but it is apparent from a careful reading of the decision that the term was employed only as a device for focusing upon the taxpayers in that case. In addition, the constant reference to the fact that those taxpayers intended a shorter time for use of the asset than the economic life of the asset itself fortifies the conclusion that the holding in Massey Motors, Inc., is not controlling here:

> "We therefore conclude that the Congress intended that the taxpayer should, under the allowance for depreciation, recover only the cost of the asset less the estimated salvage, resale or second-hand value. *This requires that the useful life of the asset be related to the period for which it may reasonably be expected to be employed in the taxpayer's business.* Likewise salvage value must include estimated resale or second-hand value." 364 U.S. at 107, 80 S.Ct. at 1419. (Emphasis added.)

Thus, it appears that the estimate of the useful life of assets involved in this case could not have been redetermined solely because these assets were in fact sold during the taxable year in question. So here, the period for which the assets were reasonably expected to be employed in the plaintiff's business was the physical or economic life of each asset. In other words, the plaintiff did not have, as far as the stipulated facts show, a pre-determined plan of disposal of the assets at a time prior to the expiration of the period constituting the useful lives of the assets.

■ May the "salvage value" be redetermined here? The Regulations specifically permit a redetermination of salvage value only when there has been a redetermination of useful ·life. Regs., sec. 1.167(a)–1(c). Plaintiff forcefully argues that the language of the Regulations permitting a redetermination of salvage value under certain conditions necessarily implies a prohibition against such redetermination in the absence of such conditions. It places reliance upon that portion of section 167(a)–1(c) which prohibits a change in salvage value merely because of a change in price levels. In other words, the sale price received for an asset prior to the expiration of its useful physical life is no more than a reflection of the market value of the asset at a particular point in time. It is apparent, therefore, that a redetermination of salvage value may not be made without a clear showing of the necessity for redetermining the useful life. On this point, the Regulations are clear.

It should also be noted that the present Regulations differ materially from those first proposed and published in the Federal Register on November 11, 1955. The .proposed Regulations provided as follows:

> "Salvage value is the amount realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is retired from service by the taxpayer. Salvage, when reduced by the cost of removal, is referred to as net salvage. The time àt which an asset is retired from service may vary according to the policy of the taxpayer. If the taxpayer's policy is to dispose of assets which are still in good operating condition, the salvage value may represent a relatively large proportion of the original basis of the as-

set. However, if the taxpayer customarily uses an asset until its inherent useful life has been substantially exhausted, salvage value may represent no more than junk value."

It is significant that the language of the present Regulations, "determined at the time of acquisition," and "salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels," was not present in the Proposed Regulations.

The defendant next urges upon us a number of Tax Court cases, and one from the Sixth Circuit Court of Appeals, as controlling in this matter. The principal decision upon which reliance is placed is Cohn v. United States, 259 F.2d 371, 378 (6th Cir., 1958). In that case, assets used in the operation of three flying schools were depreciated over an estimated useful life designed to coincide with the termination of the flying school programs in 1944. The assets involved were sold in 1944 at prices in excess of the undepreciated cost as of the beginning of the taxable year. In affirming the trial court's denial of the depreciation allowance for the year of sale, the Court of Appeals said:

"But the Government is not contending that salvage value should be adjusted annually in order to conform with current market values, or that it should be adjusted at all on account of 'mere fluctuation in market value.' In so far as this case is concerned *the issue is whether salvage value can be adjusted at or near the end of the useful life of the asset* when it is shown by an actual sale of the asset that there is a substantial difference between what was estimated and what it actually is. We are not concerned with mere fluctuations or with any fluctuations from year to year. On the contrary, we have a single and final adjustment in the closing of the books on the asset involved. Under such circumstances the practical difficulties urged upon us are largely nonexistent. (Emphasis added.)

\* \* \* \* \* \*

"Depreciation involves a combination of useful life and salvage value, both estimated. If, under certain circumstances, depreciation can be reconsidered through a redetermination of useful life, it would seem logical to permit, at least at the same time, a reconsideration and redetermination of salvage value. Since a change in the depreciation allowance is not applied retroactively, such a change in the salvage value would not affect prior taxable years. In Wier Long Leaf Lumber Co., 9 T.C. 990, 998 [CCH Dec. 16, 1957], reversed on other grounds, 5 Cir. 173 F.2d 549, the Tax Court, in discussing the method to be used in arriving at the 'reasonable allowance' provided by the statute for depreciation on mill property owned by the taxpayer, referred to 'the currently ascertained' salvage value and stated, 'An adjustment to correct for mistaken salvage value is no different from an adjustment of a mistaken estimate of years of use.' Appellants also rely upon this case, contending that in the Court's later consideration of the depreciation allowance on automobiles it stated the rule which is now urged upon us by them. That the question with respect to the automobiles was not the same question previously considered, is shown by the Court's statement: 'Granting that depreciation deductions computed in the first instance upon an assumed salvage value must be adjusted from time to time upon ascertainment of inaccuracies in that assumed value, just as adjustments are required for changes in estimates of anticipated life \* \* \*, that is not the question submitted.'"

In Cohn, therefore, as in a number of other cases relied upon by defendant, the Court was concerned with assets the estimated useful lives of which were about to expire. The useful life estimate in

Cohn was the period of time for which these assets were expected to be useful in the business. As the business was about to terminate, the time of sale of the assets was an appropriate time to reconsider the estimated useful life and also the estimate of salvage. This decision makes good sense. The taxpayer anticipated the use of the assets in his business only until 1944. At that time, they ceased to be of use and a proper accounting of the original estimates could be made. In the case at bar, and in every case in which property is sold as part of a going concern, the value of the property on the date of sale or the end of the year on which the sale occurs will very rarely coincide with the estimated salvage value. It is my view that the sale price received for the assets does not properly reflect "salvage value." Rather, it merely reflects the value of the property at a particular point of time *prior* to the date at which the estimate of salvage value is to be judged, *i. e.*, at the end of the estimated useful life of the property. The sale merely reflects a probable interim appreciation (or depreciation) in the value of the property due to a variety of factors. The Regulations are quite specific in their renunciation of a fluctuation in market value as a guideline for depreciation allowances. See Regs., section 1.167(a)–1(c).

■ In Wier Long Leaf Lumber Co. v. C. I. R., 9 T.C. 990 (1957), reversed on other grounds, 5 Cir., 173 F.2d 549 (1949), the taxpayer operated a sawmill and owned adjoining tracts of timber. Depreciation of the mill was based upon an estimate of the number of years during which the timber lands would yield sufficient raw material for the mill. The Tax Court sustained the Commissioner in disallowing the taxpayer any deduction for depreciation in the year of the sale of the mill because the price received therefor was in excess of the undepreciated cost of the mill. At the time of sale, however, it appears that the timber supply was substantially exhausted so that the basis of the estimate of useful life had been realized. In sus-

taining the disallowance of depreciation on the mill, the Court stated:

"In the present taxable year petitioner had all of the facts before it upon which it could compute an accurate amount to be deducted by it as its depreciation allowance for that year. In order to arrive at the correct amount, i. e., the 'reasonable allowance' under the statute, it had only to adjust the annual deduction which it proposed to take for the instant year by comparing its basis for the property with the total deductions previously taken and the *currently ascertained correct salvage value*. It has long been the rule that depreciation deductions are to be corrected in any year when it is apparent that the factor involving the extent of the useful life is erroneous (see e. g., Washburn Wire Co. v. Commissioner, (C.C.A. 1st Cir.), 67 Fed.(2d) 658), and that the reasonableness of a deduction for depreciation is to be determined upon conditions known to exist at the end of the period for which the return is made. Regulations 111, sec. 29.23(1)–5. See Commissioner [of Internal Revenue] v. Mutual Fertilizer Co. (C.C.A., 5th Cir.), 159 Fed. (2d) 470. An adjustment to correct for mistaken salvage value is no different from an adjustment of a mistaken estimate of years of use. In this manner depreciation can be kept to an accurate provision for the return of petitioner's capital investment in the property. This is what the law contemplates. See Helvering v. Virginian Hotel Corporation, 319 U.S. 523 [63 S.Ct. 1260, 87 L.Ed. 1561]." 9 T.C. at 998. [Emphasis added.]

Again it should be noted that this aspect of the case is similar to Cohn in that the estimated useful life of the assets— whether gauged by their physical useful life or by the taxpayer's intended useful life of them in the business— terminated, or came very near to termination, in the year of sale. This is not

the case at bar. Further, another set of assets was employed by the taxpayer in Wier—automobiles—which were disposed of at the same time as the mill. In *denying the disallowance* for depreciation in the year of sale on these assets, the Tax Court, at p. 999 of 9 T.C., said:

> "It must be taken as settled that mere appreciation in value due to extraneous causes has no influence or the depreciation allowance, one way or the other. The sole fact therefore in any specific situation that a given price is received for articles not fully depreciated throws no light on the effect upon the depreciation allowance. If a higher price was available for the automobiles because of a miscalculation as to their useful life, a different result would follow from an enhanced sale price due to appreciated values. * * * The depreciation deduction cannot be disallowed merely by reason of the price received for the article without consideration of other factors." (Citations omitted.)

It appears to me that the distinction drawn by the Tax Court is correct. It is plain from the decision that a sale of an asset at the end of its useful life for an amount in excess of its undepreciated cost at the beginning of the year of sale will justify a redetermination of salvage value. On the other hand, it is equally clear that the Tax Court held that sale of assets prior to the end of "useful life" at a price in excess of undepreciated cost at the beginning of the year of sale does not justify a redetermination of salvage value because the excess of price over cost is mere appreciation in value.

Other cases relied upon by the defendant involve the same distinction pointed out in the Cohn and Wier decisions.

Although the defendant apparently has not relied upon Revenue Ruling 62–92, 1962 Cum.Bull. 29, 30, dealing with this subject, it is advisable to refer to it as pertinent. The headnote of the Ruling reads:

> "The depreciation deduction for the taxable year of disposition of an asset used in the trade or business * * * otherwise properly allowable under the taxpayer's method of accounting for depreciation, is limited to the amount, if any, by which the adjusted basis of the asset at the beginning of the year exceeds the amount realized from sale or exchange."

The body of the Ruling discusses the Cohn case, supra, and proceeds to assert that the Regulations saying there shall be no change in salvage value because of fluctuations in market value "does not preclude adjustment of salvage value where there is a clear and convincing basis therefor even though no adjustment of useful life is required." It is apparent that this Ruling is broader than the decision in Cohn. Were it to be followed, it certainly would encompass the facts of the case at bar. And yet, the Ruling defines Cohn as a case in which "it was held that it is proper * * in computing the deduction for depreciation of an asset, to adjust salvage value *at or near the end of the useful life of an asset* where there is a difference between what was estimated and what salvage value as shown by actual sale proves to be." (Emphasis added.) Thus, I must conclude that either the Ruling is limited to the fact situation of disposal of assets at or near the end of useful life, or that the Ruling is erroneous as a matter of law. The result of such a decision being identical on the facts here, it becomes unnecessary to make the choice.

It is therefore my opinion that the Commissioner improperly disallowed the deduction in question and that plaintiff is entitled to a refund of the monies paid.

See the recent case of Motorlease Corporation v. United States, D.C., 215 F. Supp. 356.

Plaintiff will please prepare appropriate Findings of Fact, Conclusions of Law, Form of Judgment and Order for Judgment.