OCCIDENTAL LOAN COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 63–1055.

United States District Court
S. D. California,
Central Division.

Nov. 13, 1964.

Francis C. Whelan, U. S. Atty., Loyal E. Keir and James S. Bay, Asst. U. S. Attys., Los Angeles, Cal., for United States.

Wm. A. Cruikshank, Jr., Dorothy La-Follette Sousa, Beverly Hills, Cal., for plaintiff.

BYRNE, District Judge.

On September 5, 1963, Occidental Loan Company, plaintiff, having complied with all conditions precedent, brought this action against the United States of America, defendant, for the recovery of federal income taxes, which plaintiff asserts were illegally assessed and collected. Jurisdiction of this Court is founded upon: 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a) (1).

The dispute arises out of the following facts, which are stipulated to by the parties.

On October 31, 1958, plaintiff acquired all of the assets of two of its wholly-owned subsidiaries, when they were completely liquidated. Among those assets was a large parcel of land located in the City of Lancaster, County of Los Angeles, State of California. A number of duplexes and four-family residential structures, comprising a total of 202 residential rental units, were on the land. The units were constructed and completed in the period from August, 1957, to November, 1957. The cost of the land itself was $176,337.53 and the cost of the units thereon was $1,049,267.44. Thus the total cost was $1,225,604.97.

Plaintiff computed depreciation on these units using the "sum-of-the-digits" method on the basis of an estimated useful life of 25 years with no salvage value. This was an approved and proper method of computing depreciation. Using this method a total of $171,531.64 was properly deducted for depreciation between the date of completion of the improvements and December 31, 1959. Thus, as of January 1, 1960, the beginning of the tax year involved here, the adjusted basis (original cost less depreciation) of the real property was $176,337.-53 for the land plus $877,735.80 for the improvements; or a total of $1,-054,073.33.

Apparently, as a result of adverse economic conditions in Lancaster, plaintiff decided to sell the property. Thus, on September 12, 1960, plaintiff sold the property to Martin Luther Homes, Inc., for a total price of $1,570,371.77. It is agreed that at least $877,735.80 of this price is attributable to the improvements.

In its federal income tax return for the calendar year 1960, plaintiff deducted an allowance for depreciation for the period from January 1, 1960, to September 12, 1960. The amount so deducted was $49,193.44. Plaintiff used the same proper method of computing depreciation and defendant admits that if

plaintiff had not sold the property during 1960 that amount would have been proper. However, defendant takes the position that where property is sold during the tax year for an amount in excess of its adjusted basis on the first day of that year the taxpayer is not entitled to a deduction for depreciation during that year. So, for example, if the adjusted basis is $500 at the beginning of the year, under defendant's view the taxpayer will not be entitled to any depreciation whatever if he sells the asset during that year for $500 or more. Because of the application of this view of the law, plaintiff was denied a depreciation deduction for 1960, since the rental units were sold during that year for as much as or more than the adjusted basis at the start of the year. Disallowance of this deduction resulted in an assessment of $27,979.60, of additional taxes and interest, and it is this amount that plaintiff is seeking to recover on grounds that defendant's view of the law is incorrect.

Although there are issues of fact remaining in the case the parties have stipulated that if this court decides the defendant's view of the above-mentioned question of law is erroneous, such determination is dispositive of the cause without reaching the issues of fact. It is the judgment of this court that the defendant's view of the question of law cannot be sustained.

The basis code section involved here is 26 U.S.C. § 167(a), which reads in part:

"There shall be allowed as a depreciation deduction a reasonable allowance for the *exhaustion, wear and tear* (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business * * *." [Emphasis added.]

While this provision seems simple enough on its face, it leaves much unsaid. In an attempt to fill in the gaps, numerous regulations have been issued.[1]

1. Treasury Regulation [T.Reg.] § 1.167 (a)-1(a) states:

"The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property. * * * An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. * * * The allowance shall not reflect amounts representing a mere reduction in market value."

Defining useful life, the regulations state:

"the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business. * * * This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. * * * The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined

when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination." [T.Reg. § 1.167(a)-1(b)]

And salvage value is defined as follows:

"Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels. However, if there is a redetermination of useful life. * * * salvage value may be redetermined based upon facts known at the time of such redetermination of useful life." [T.Reg. § 1.167(a)-1(c)]

Finally, the following regulation also has some pertinence to the inquiry which must be made in this case:

"The reasonableness of any claim for depreciation shall be determined upon the

Although these regulations, taken with 26 U.S.C. § 167, do help to delineate the purpose of the depreciation allowance, they also leave something unsaid. That is, they do not precisely pinpoint what depreciation is all about. In United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054 (1927) Justice Brandeis put his finger on the real purpose of the depreciation allowance, when he said, at pages 300–301, 47 S.Ct. at page 610:

"The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired."

See also, Commissioner v. Moore, 207 F.2d 265, 277 (9th Cir. 1953), cert. denied, 347 U.S. 942, 74 S.Ct. 637, 9 L. Ed.2d 1091 (1954), where the court says, "[w]hen physical property is involved, such as a building, we know of a certainty that time and the elements will ultimately wear it away."

Very little needs to be added. The depreciation allowance recognizes the tangible physical fact that business property is used up while it is in service. Thus, income produced therefrom is not all profit. Each passing day results in wear and tear on the asset, and, thus, in a sense, a little bit of that asset is sold each day. When the customer purchases a product or service he has also purchased a small increment of the asset which was used to produce that product or service. Recognizing this, Congress has allowed a depreciation deduction so that at the end of its useful life the owner will still have his capital investment in his hands. He will have received part of it via the depreciation deduction, which represents the increment of his asset that was sold, and he will receive the remainder via the salvage value, which represents the increment that was not sold. This is the theoretical and, ideally, practical operation of the depreciation allowance.

The problem presented here is a knotty one. However, this is far from being a case of first impression. The competing considerations have been fully set out in a number of similar cases. In passing upon this question at least four District Courts have held that defendant's position is erroneous. Wyoming Builders, Inc. v. United States, 227 F. Supp. 534 (D.Wyo.1964); S & A Company v. United States, 218 F.Supp. 677 (D.Minn.1963); Motorlease Corporation v. United States, 215 F.Supp. 356 (D. Conn.1963), reversed, infra; and Kimball Gas Products Co. v. United States, 12 A.F.T.R.2d 5105 (W.D.Tex.1962). See also, Wier Long Leaf Lumber Co. v. Commissioner, 9 T.C. 990 (1947), reversed in part on other grounds, 173 F.2d 549 (5th Cir. 1949). However, the Second Circuit Court of Appeals has sustained defendant's position. United States v. Motorlease Corporation, 334 F. 2d 617 (2nd Cir. 1964); and Fribourg Navigation Company, Inc. v. Commissioner, 335 F.2d 15 (2d Cir. 1964). [These cases were decided by two entirely different panels of the court, with one judge dissenting in each case. Thus, four judges held in favor of defendant's position, but two against it.] See also,

basis of conditions known to exist at the end of the period for which the return is made." [T.Reg. § 1.167(b)– 0(a)]

Rouse v. Commissioner, 39 T.C. 70 (1962) and Rev.Rul. 62–92.

 The argument in the cases holding against the defendant's position proceeds as follows. A taxpayer is entitled to a reasonable depreciation allowance for wear and tear, etc. on his property. The regulations set up a method for estimating that wear and tear, and purport to insulate the estimate from mere changes in market value. Thus, when the asset is purchased, the taxpayer is required to make a reasonable estimate of the salvage value of that property and an estimate of the useful life in his business, judged by the way his business is normally conducted. Moreover, the regulations themselves state that these estimates will not normally be tampered with, although at the end of any depreciation period a change can be required if it is apparent that the property really has a different useful life or, possibly, if it is obvious that the estimated salvage value is erroneous. However, when the taxpayer sells his asset at an earlier time, for some reason which could not have been foreseen, that act in and of itself is not enough to cause a change in the estimates. Thus, where the government admits that the estimated useful life and the estimated salvage value at the end of that useful life remain the same, and even admits that the amount of depreciation taken would have been proper were it not for the sale of the asset, there is no reason to disallow the depreciation. The mere fact of sale at an amount higher than the adjusted basis does not, *ipso facto*, prove that the estimates were incorrect, so there is no reason to readjust them and disallow depreciation in the year of sale, regardless of the sale price. See, Wyoming Builders, Inc. v. United States; S & A Company v. United States; Motorlease Corporation v. United States; Kimball Gas Products v. United States; and the dissents in United States v. Motorlease and Fribourg Navigation Company, Inc. v. Commissioner; all supra.

In the cases which hold for defendant's position the Second Circuit Court of Appeals stated that neither the Code nor the regulations would entirely dispose of the issue. As that court analyzed the case, the important question was which "construction of these sections best comports with the congressional design in establishing the depreciation provisions of the Internal Revenue laws." United States v. Motorlease, supra, 334 F.2d at page 618. As the court saw it, the core of the problem revolved around the commissioner's claim that it was "unreasonable to follow an estimate [of depreciation] when one knows that estimate is incorrect." Fribourg Navigation Company, Inc. v. Commissioner, supra, 335 F.2d at page 17. Considering that to be the most important point in the whole dispute, the court stated that when a wasting asset was sold during the year for an amount which was not less than its adjusted basis at the start of the year it was clear that the taxpayer was not entitled to depreciation. The reason for this was that the fact of the sale at the higher price belied any notion of depreciation of the asset. Clearly, said the court, it had not depreciated. Thus, to allow the taxpayer a depreciation deduction would not serve the purposes of the allowance, and would merely result in converting the taxpayer's ordinary income into capital gains. That was not the intent of Congress. In its view there was no resulting injustice to the taxpayer in denying him this deduction, which he now *knew* to be incorrect. The court also pointed out that it is possible to construe the regulations in such a way as to allow this result, and that is undoubtedly true. See, United States v. Motorlease; and Fribourg Navigation Company, Inc. v. Commissioner, both supra.

With all deference to the majority judges on the Second Circuit Court of Appeals, it seems to me that the position of the District Courts, outlined above, is the correct one. Not only does their analysis of the statute and the existing regulations seem to be more accurate, but their decisions seem to be

more in keeping with the spirit of the depreciation deduction.

■ It is said that the purpose of the depreciation allowance is to allow the taxpayer to recover the cost of a wasting asset. But, truthfully, the matter goes somewhat deeper than that. It is a recognition of the physical fact that most property—like mortals—deteriorates with time and use. Thus, all accounting theories aside, buildings deteriorate. Each year the plaster gets a little drier, the plumbing gets a little worse, the floors wear down to some extent, the roof becomes more subject to leaks, and, in general, a year's worth of wear, tear, and general decay is totaled up. This is the price the taxpayer pays for owning buildings. It is part of the cost of renting them. This occurs regardless of the market value of the property. Whether that value goes up or down, the elements do their work. They do not care about the selling price of goods on human markets. It seems that this is what the depreciation deduction is intended to cover, and it has little or nothing to do with market value. But to enable proper spreading of this depreciation over the years some estimates must be made. Thus, the taxpayer determines what the property will be worth at the end of its useful life. He also decides the length of that life. In the case of buildings the worth is often zero at the end, but the useful life is long. Thus, in the case at hand, it was decided that the useful life of the buildings should be 25 years and that they would have no value whatever at that time. No one disputes these estimates. By using these estimates the taxpayer can determine how much damage time and the elements do to his property each year—how much of the asset is used up. If the estimates are reasonably accurate this will occur with little reference to market value. The regulations themselves pay homage to this concept. Thus, T.Reg. § 1.167(a)–1(a) states that the depreciation deduction shall *not* "reflect amounts representing a mere reduction in market value."; and T.Reg.

§ 1.167(a)–1(b) states that salvage value shall not be changed due to mere changes in price levels. Both of these statements seem to be a clear recognition of the fact that depreciation goes on from year to year regardless of the fluctuations of the market. It is true that the depreciation deduction is a mere estimate, but what it is an estimate of is the unceasing deterioration of the property.

What, then, happens when an asset is sold during the year for a price in excess of its adjusted basis at the beginning of that year? Does that mean that the building has not sustained any deterioration during the year? Does it mean that a giant hand has turned back the forces of nature and preserved the building perfectly intact? Of course it does not. The building has continued to deteriorate as it always has and always will. The taxpayer may have obtained more than the adjusted basis at the start of the year, but that can easily be taken to reflect fluctuations in the market value of the property. Perhaps a three year old building which would have been worth only $10,000 is now worth $15,000 because of a temporary shift in population. That does not change the wear and tear upon it. Therefore, if the taxpayer takes depreciation in that year, he is not by some legalistic alchemy, turning ordinary income into capital gains. His gain *is* capital gain in every sense of the word. If an old piece of property with a reasonably depreciated basis of $10,000 is sold for $15,000 there is as much of a capital gain as there is if a new property with a basis of $10,000 is sold for that amount.

■ Thus, it is clear that it was improper to disallow plaintiff's depreciation deduction solely because of its sale of its property at a price equal to or greater than the adjusted basis at the beginning of the year.

Nor do the cases of Cohn v. United States, 259 F.2d 371 (6th Cir. 1958) and Massey Motors, Inc. v. United States, 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592, rehearing denied sub nom., Commissioner v. Evans, 364 U.S. 854, 81

S.Ct. 31, 5 L.Ed.2d 78 (1960) require, or suggest, a different result.

In Cohn the taxpayer had unreasonably chosen the useful life and salvage value. When the time came to sell the property at the end of its chosen useful life, it was clear that it was worth a great amount of money. But the taxpayer had estimated it would be worth nothing at all. Thus, the estimate of depreciation was largely based on a false estimate of salvage value. In such a case it was undoubtedly proper to make an adjustment. And Cohn not only required adjustments in the year of sale, but also in the prior years, since, it seems, the amount of the claimed allowance was obviously unreasonable, even as an original estimate. See also, Lane v. Commissioner, 37 T.C. 188 (1961).

In Massey Motors the taxpayer had an auto leasing business. In setting up the "useful life" he used the total economic life of the cars involved (four years), although he knew, of a virtual certainty, that he would only use them for fifteen months. As a result the taxpayer got capital gains on each car, since it was always worth more than its depreciated value when he came to sell it. The Supreme Court found that it was unreasonable to estimate the useful life in this way. Thus, taxpayer was required to use the period that the cars were *normally* used in his business rather than the full economic life. See also, Hertz Corporation v. United States, 364 U.S. 122, 80 S.Ct. 1420, 4 L.Ed.2d 1603, rehearing denied, 364 U.S. 854, 81 S. Ct. 31, 5 L.Ed.2d 78 (1960). Here again, the taxpayer's estimates were unreasonable and it was, thus, taking far more depreciation than it actually sustained by reason of wear and tear and obsolescence. As a practical matter it is well known that cars depreciate in value from year to year. And there was nothing to show market changes which would boost an old car above its properly depreciated value. Thus, the taxpayer *was* converting ordinary income into a false capital gain, and the Supreme Court's opinion should not be thought to be too startling when analyzed in that light. Nevertheless, four justices dissented to application of these principles to the taxpayers involved there. See, Massey Motors, Inc. v. United States, supra, 364 U.S. pages 107 and 121, 80 S.Ct. 1411.

So Massey Motors and Cohn stand for nothing more than the propriety of making adjustments when it is proved that the depreciation deduction taken by a taxpayer is unreasonable, or at least erroneous.

There can be little doubt that in a proper case the fact of a sale above or at the adjusted basis at the beginning of the year could be considered evidence of an improper or incorrect estimate of the amount of wear and tear—depreciation—that the property truly suffered each year. It might indicate that either the useful life or the salvage value was incorrectly chosen at the outset. But it would only be evidence of that. On the other hand, a showing that the property, as here, sold at even more than its original undepreciated cost basis, might be evidence that the increased value is solely due to market conditions. However, in the case now before this court *the defendant has admitted that the amount of depreciation was properly chosen.* Indeed, it says that were it not for the sale of the property the plaintiff would have been entitled to the amount it claimed. It does not dispute the estimate of salvage value at the end of the useful life. Nor does it dispute the length of the useful life itself. Its sole contention is that the sale shows, *ipso facto,* that plaintiff was not entitled to depreciation, and it ignores the possible effect of the market upon the sale price. That view is erroneous in both law and policy.

Thus, in a case such as the one now before the court, where defendant does not dispute the plaintiff's estimates of salvage value and useful life; and admits that depreciation was computed in a reasonable manner and would have been proper were it not for the sale of the property involved, defendant's position is untenable. Therefore, plaintiff was en-

titled to a depreciation deduction, even though the sale price exceeded the adjusted basis at the start of the year.

Counsel for plaintiff is directed to prepare a formal judgment and submit it to counsel for defendant for his approval as to form prior to presenting it to the court for signature.